(Official Translation)

IN THE SUPREME COURT OF PUERTO RICO

Gasolinas de Puerto Rico Corporation,

    Petitioner

    v.           No. RG-2000-2         Administrative Appeal

Richard F. Keeler Vázquez, Registrar
of the Property of Caguas,

    Respondent

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

As stated earlier, when the deed was presented for recordation in the Registry, the number of the main property from which the property involved in the deed of lease was segregated was mistakenly entered in the Bill of Entry of Presentation. Consequently, the Registrar of Property notified this incident as a deficiency and informed that said deed of lease had to be presented anew with a new bill bearing the correct property number and without cross-outs. The problem, therefore, lies in determining whether it is possible to correct the inadequate entry of the property number in a bill of entry of presentation when presenting a deed in the Registry of Property, or whether this deed has to be presented anew.

Before we address this matter, however, let us briefly examine this mechanism of the Registry and the mortgage-law principles involved.

[16]   A.   The document known as the bill of entry of presentation is closely related to the registry principles of priority or rank. By virtue of this fundamental principle, the recordable acts first presented in the Registry of Property shall have precedence (exclusionary or preferential) over any act presented thereafter, even if the act presented last has an earlier date (*prior tempore potior iure*). Ramón M. Roca Sastre, *Derecho hipotecario: fundamentos de la publicidad registral* 1, Barcelona, Ed. Bosch (8th ed. 1995). In this sense, time is an essential factor, because the rank or precedence of the rights will be based on a specific chronology of events.

[17]   Thus, according to Mortgage Law sec. 53 (30 L.P.R.A. § 2256), "[r]egistered titles shall become effective for third parties from the date of their registration." The law also provides: "For all intents and purposes, the [presentation][*] date . . . must appear in the registration itself." *Id.*

Thus, although registered titles become effective for third parties from the date of recordation, the date of their *presentation* shall be the decisive moment for this

---

[*] [Translator's note:  The Spanish term *presentación* was erroneously translated in the English version of this section as *registration* instead of *presentation.*

recordation to become effective, because *the effects of recordation in the Registry are retroactive to the specific date of presentation.* Roca Sastre, *supra*, at 5; Rivera Rivera, *supra*, at 188; *Ponce Federal Savings v. Registrador*, 105 D.P.R. 486 [5 P.R. Offic. Trans. 671] (1976).

[18] Now then, written proof of the turn or rank achieved through the presentation of a document is preserved in the Registry of Property through the *entry of presentation.* In gist, it involves a preliminary entry that must be issued in the order that titles are submitted to the Registry of Property. *Its purpose is to accurately set forth the exact moment or instant of the presentation so that the applicant is guaranteed his or her turn according to the order of arrival.* Roca Sastre, *supra*, at 220; 15 Eduardo Vázquez Bote, *Derecho privado puertorriqueño: derecho inmobilario registral* [(II)] §19.4, at 494, New Hampshire, Butterworths Pubs. (1992). See *Flores v. Arroyo*, 43 P.R.R. 268, 269 (1932). ("The entry of presentation is constructive notice to all the world until the document is actually recorded. Once presented, if entitled to record, a deed has all the effects of such a record.")

[19] In practice, the Registry of Property keeps a daily record system in which the documents filed are entered in chronological order. Mortgage Law sec. 34 (30 L.P.R.A. § 2154). This system is applied in Puerto Rico through the mechanism of the *bill of entry of presentation.* See G.R. secs. 31.1-31.11 of the Mortgage Regulations.

According to this system, all documents sought to be presented shall have attached one of these bills, and the applicant shall be responsible for attaching to all pertinent documents the original and a copy of this sheet. *The original bill will be the entry of presentation, and the copy will be the receipt given to the applicant.* G.R. secs. 31.4, 31.6, and 31.8 of the Mortgage Regulations. The original bills are then compiled into folders that will, in turn, constitute the Day Book. G.R. sec. 31.9 of the Mortgage Regulations. *The Day Book is one of the official books that attest to the contents of the Registry, because it is open to the public and contains all the entries of presentation issued when the bills of presentation are submitted.*[9] *That is, the Day Book—through the bills it contains—preserves the order of titles presented for recordation and attests to such fact.* G.R. secs. 29.1 and 31.9 of the Mortgage Regulations.

[20] Since the entry of presentation confirms the information necessary to give public notice of titles presented that may affect a specific property and of their respective rankings, or order of precedence, a mistake made in the original bill of entry of presentation regarding the property number could disrupt the correct publicity that must be guaranteed by Registry entries. Consequently, each bill must accurately set forth the necessary information to fulfill the purpose of the entry of presentation in terms of

---

[9] "The official volumes kept in the Registry of Property and *that shall attest to their content shall be . . . and the Day Book.*" Section 29.1 of the General Regulations for the Execution of the Mortgage and Property Registry Act 278 (spec. ed. 1998) (Mortgage Regulations).

providing adequate identification of the title being presented and attesting to the fact of its recordation in the Registry.[10]

[21] Consequently, since the property number in the bill of entry of presentation identifies the property affected by a legal transaction, *the erroneous statement of such number is tantamount to a lack of adequate notice of the fact that, in the sphere of legal reality outside the Registry, a title has been conveyed encumbering said property and, thus, giving rise to the undesirable* anomaly of an inaccuracy in the Registry.

In the instant case, when the wrong property number was recorded in the bill, the entry of presentation publicized the wrong property. Therefore, the mistaken presence of an entry of presentation for property No. 2,264 entailed the publication of an absence of encumbrances on property No. 30,049. In these circumstances, we deem that the Registrar of Property acted correctly in not making the recordation sought based on this mistake that had previously gone undetected in the bill. However, we believe that instead of requesting a new presentation of the document, he should have followed the statutory and regulatory procedures for correcting entries.

[22] B. As a general rule, the Registrar of Property has the obligation to issue the entry of presentation to every applicant, inasmuch as the Mortgage Law itself provides that "[t]he Registrar shall make a note in the Day Book of every title presented at the Registry for registration or annotation, even though he believes that some legal requirement may be missing." Mortgage Law sec. 50 (30 L.P.R.A. § 2253). Undoubtedly, this section sought to clearly establish that all applicants have the right to demand that the Registry accept all the documents filed and to have the entry of presentation issued to preserve their corresponding turn, regardless of the fact that not all the necessary requirements are met. Of course, the survival of the rank obtained will be subject to a subsequent process of qualification and correction of notified deficiencies.

[23] Despite the Registrar's duty to issue the entry of presentation, the Mortgage Regulations incorporate an exception to this obligation that is relevant to the instant case. G.R. sec. 31.6(a) of the Mortgage Regulations at 285-286, provides in pertinent part:

> *It shall be the responsibility of the applicant to properly fill out said bill, which may not contain ink blots, crossing-outs or erasures. The employee shall verify the correction of the bill in light of the document submitted for his or her consideration. If they coincide, the applicant and the Registry employee shall sign it prior to moving on to the next stage of the presentation process.*
>
> *If the bill of entry of presentation is not correctly filled out, the document involved will not be presented. The document presentation process may not be held up because applicants need time to correct or to add information missing from the bill of entry of presentation.* [Emphasis added.]

---

[10] Among other things, the Bill of the Entry of Presentation must contain: (1) entry and Day Book number; (2) date and time of presentation; (3) identification of document; (4) the rights whose recordation, cancellation or annotation is sought; (5) *description of the properties with respect to which the registry procedures are sought and their location*; (6) the person in whose name registration is sought; and (7) description of the documents attached thereto. G.R. sec. 31.10 of the Mortgage Regulations.

4

This section incorporated into our body of registry and mortgage laws—in line with the authority conferred by Mortgage Law sec. 36 (30 L.P.R.A. § 2156) on the Secretary of Justice to regulate and require these bills—a situation in which the Registrar may refuse to make the entry of presentation by not receiving the document sought to be submitted.[11]

Now then, this regulatory provision was not applied here. Ordinarily, if the official in charge of receiving the documents presented in the Registry of Property confronts this type of situation, he or she must return the bill to the applicant so that the latter may prepare a new one and record it according to its turn in the Registry. Here, however, the deficiency in the bill of presentation was not noticed during the presentation process, since it went undetected, and an entry of presentation was made on a property whose number appeared in the bill. In fact, when the Bill of Entry of Presentation was included in the Day Book, the Registry books showed the presentation of a deed of lease on property No. 2,264, and not on property No. 30,049. It was not until after the document was presented that the Registrar of Property noticed the mistake in the bill when he observed the anonymous correction and cross-out.

[24] Certainly, according to sec. 31.6(a) of the Mortgage Regulations, it is the applicant's responsibility to correctly fill out the bill. However, the employee of the Registry of Property also has the responsibility of "verify[ing] the correction of the bill in light of the document submitted for his or her consideration." *Id.* In this sense, the responsibility is shared and both, in this case, contributed to what transpired: one, for failing to adequately fill out the bill, and the other, for failing to examine it carefully by comparing it to the deed of lease.

In any event, the lack of circumspection on the part of the Registry of Property official in failing to detect the mistake in the bill led to a situation of *error in the Registry*, a scenario governed by the provisions related to the correction of errors by the Registrar in Registry entries. See Mortgage Law secs. 150-154 (30 L.P.R.A. §§ 2501-2505), and G.R. secs. 141.1-144.1 of the Mortgage Regulations. See also Rivera Rivera, *supra*, at 318-323.

[25] It is appropriate to clarify on this point that in deciding this case under this statutory and regulatory scheme, we cannot lose sight of the reality announced by the Registry entries regarding the situation of the properties in question and of the effect this could have had on the trust placed in the records of the Registry by third parties who have legitimately acquired rights over these properties. In this respect, a commentator has remarked:

> [I]n all situations of error, one must bear in mind that the entry, as worded, *produces its normal effects with regard to its entire content until*

---

[11] This also occurs in other circumstances. For instance, the entry of presentation cannot be made if the total fees are not included (30 L.P.R.A. § 1767d); when the refusal is not appealed, the defects are left uncorrected and the document is presented anew (Mortgage Law sec. 79 (30 L.P.R.A. § 2282)), and when the refusal is affirmed by the Supreme Court, the deficiencies remain uncorrected, and the document is presented again by the same party or by another person (Mortgage Law sec. 79 (30 L.P.R.A. § 2282)). Luis Rafael Rivera Rivera, *Derecho registral inmobiliario puertorriqueño* 260, San Juan, Jurídica Eds. (2000).

*it is corrected by legal means*, and the mere allegation that it is mistaken does not suffice to strip it of any of those effects.

5 Buenaventura Camy Sánchez-Cañete, *Comentarios a la legislación hipotecaria* 683, Pamplona, Ed. Aranzadi (1983). (Emphasis added.)

On this last point, we take judicial notice of the fact reported by the Registrar of Property in the sense that after the Bill of Entry of Presentation in question was submitted, titles on property No. 30,049 (the property referred to in the deed of lease presented) were presented. The documents submitted by the Registrar specifically point out that several deeds that encumber property No. 30,049[12] have been presented after May 5, 1997 (the date on which the deed of lease was presented) and up to the date on which this Administrative Appeal was instituted.

[26] The Mortgage Law of 1893 (30 L.P.R.A. former § 31 *et seq.*), which preceded our current statute, set forth the circumstances and procedures to be followed for correcting an entry in the Registry of Property, depending on whether the error committed was a so-called *material error* or an error of construction. See secs. 254-264 of the Mortgage Law of 1893 (30 L.P.R.A. former §§ 431-441).

However, with the enactment of the 1979 Mortgage Law, the Legislative Assembly opted to dispense with this distinction among the types of errors to be corrected and rather stressed the availability to the Registrar of the title filed for recordation.[13] Thus the Mortgage Law currently in force allows for the *correction* of errors in the Registry provided that the document that triggered the action is available for inspection, and as long as the correction

---

[12] Among these deeds, the following ones are pending recordation: (1) Deed No. 4, executed on February 10, 1999, before notary public Orlando R. González, *Entry 186, Day Book 859*; (2) Deed No. 10, executed on February 17, 1999, before notary public Orlando R. González, *entry 95, Day Book 861*; (3) Deed No. 3, executed on February 6, 1999, before notary public Orlando R. González, *entry 187, Day Book 859*; (4) Deed No. 5, executed on February 10, 1999, before notary public Orlando R. González, *entry 188, Day Book 859*; (5) Deed No. 6, executed on February 3, 1998, before notary public Rafael Fernández Britto, *entry 138, Day Book 819*. See *Notice*, September 28, 1999, at 2; *Certificate of the Registrar of Property*, August 24, 1999 (*Answer to Administrative Appeal*, Appendix III).

[13] See *Informe de la Comisión de lo Jurídico del Senado sobre el P. del S. 792* [Report of the Senate Committee on Legal Matters on S. B. 792], 8th Leg., 3d Ord. Sess. 12 (May 18, 1979):

"We recommend that the established practice of correcting errors be accepted, provided that the title that caused the recordation is available for scrutiny, regardless of the nature of the error, provided that the subsequent titleholders are not harmed or consent to it."

See also *Informe de la Comisión de lo Jurídico de la Cámara de Representantes sobre el P. del S. 792* [Report of the House Committee on Legal Matters on S. B. 792], 8th Leg., 3d Ord. Sess. 17 (June 1979):

"The current law established a classification of errors of construction and material errors for the correction of errors committed in the entries made by the Registrar. In light of the developments in this field, this classification is not justified. Given the problems entailed by the classification and attendant difficulties, our bill adopts Sections 150 and 151, which do away with all classifications and stress the fact whether the document is still at hand and available to the Registrar."

RG-2000-2                                                        (Official Translation)

*does not affect the rights of registered titleholders. Pino Development Corp. v. Registrador,*
133 D.P.R. at 380 [33 P. R. Offic. Trans. at ___].

Mortgage Law sec. 150 (30 L.P.R.A. § 2501) provides in pertinent part:

> When errors have been made in *presentation entries* or notes
> which are not made directly and specifically by virtue of a title, and in
> reference indications, *they may be rectified even though the title
> motivating the registration may not be available, provided that the
> corresponding main registration is sufficient to reveal the error and it is
> possible to rectify the latter by it.* [Emphasis added.]

Likewise, G.R. sec. 141.3 of the Mortgage Regulations, at 391, provides, in
pertinent part:

> Registrars may *themselves* correct, under their responsibility, the
> errors committed:
>
> . . . .
>
> *Second: In the entries of presentation,* margin notes not made
> directly or specifically by virtue of a title, and in reference indications,
> *even if the titles are not available in the Registry office, provided that the
> corresponding main registration suffices to reveal the error and that it is
> possible to rectify the latter by it.* [Emphasis added.]

[27]   The cited provisions show that, ordinarily, an error in the *entry of presentation*
(and, consequently, in the bill of entry of presentation) *may be corrected by the Registrar,
motu proprio,* regardless of whether the titles that gave rise to the entries are in the
Registry office; and if they are not available, they may be corrected by the Registrar
of Property when the error and the information necessary to correct it arise from the main
recordation. Under no circumstances, however, may the Registrar correct the error by
crossing it out; the preparation of a new entry is necessary. G.R. sec. 141.1 of the
Mortgage Regulations.

[28]   The law, however, does provide that the authority to correct, motu proprio,
an entry of presentation *comes into effect when such a correction may affect the rights of
registered titleholders, as is the situation in this case.* In that respect, the second
paragraph of Mortgage Law sec. 151 provides:

> *When rectification might affect the rights of registered titleholders,
> their consent or a judicial resolution ordering the rectification of the
> entries shall be required.*

30 L.P.R.A. § 2502. (Emphasis added.) See also G.R. secs. 141.5 and 142.1 of the
Mortgage Regulations.

Thus, before correcting or rectifying any fact set forth in the Registry of Property,
the consent of these titleholders whose rights could be affected by the correction must be
sought; and, in the absence of this consent, "the Registrar or the party seeking the

RG-2000-2

7

(Official Translation)

correction must first obtain a court decision to that effect" ordering the correction of the entry. G.R. sec. 141.5 of the Mortgage Regulations, at 392.[14]

[29] Now then, the Mortgage Law provides that rectification of an error shall become effective on the date said correction takes place (Mortgage Law sec. 154 (30 L.P.R.A. §2505)), provided, of course, that said change would not affect those third persons protected by the Registry's attestation authority. See Mortgage Law sec. 110 (30 L.P.R.A. § 2360): "In no case, may correction of the Registry impair the rights legitimately acquired by a third party who meets the conditions hereby established."

In other words, ordinarily, according to the law, the effectiveness of the correction of errors in Registry entries under this statutory scheme shall be effective as of the moment they are made. Nonetheless, we must clarify that if all the titleholders affected by the correction give their consent—including subsequent titleholders who trusted and believed in the status publicized by the Registry—the effect of the correction may be retroactive to the date on which the deed was presented for recordation. Otherwise, it would make no sense to seek the consent of the titleholders because if, even with their consent, the correction was always prospective, their rights would not be affected in any way, and such consent would be absurd.

It arises from the above that it was the duty of the Registrar of Property to notify the applicant that it had to seek the consent of those registered titleholders whose rights could be affected by the correction of the bill of presentation in order to then correct the bill. In the alternative, the Registrar should have asked the Court of First Instance—or notified the applicant and asked it to do so—to order that said correction be made if appropriate. See sec. 141.1 *et seq.* of the Mortgage Regulations.

[30] We must reiterate that the Registrar of Property did not have the option of simply ignoring the error in the bill and recording the title presented, thus validating a cross-out that no one knows when it was made. The crucial importance of the bill of entry of presentation in the registry law system—in terms of how it guarantees correctness in the publicity of the date and other circumstances surrounding the titles presented—simply eliminates this option. Moreover, the Mortgage Regulations provide that the errors committed by the Registrar "shall not be corrected by cross-outs, interlineations or erasures, but rather by drawing up a new entry in the manner set forth in Title IX of the Law." G.R. sec. 141.1 of the Mortgage Regulations, at 390. Consequently, the Registrar was correct in refusing to record the deed. However, the Registrar should not have notified this deficiency in order to demand a new presentation of the public deed, given the fact that another legal mechanism was available to him.

JMS/mal

---

[14] With regard to the manner in which this consent of subsequent titleholders must be presented, the Regulations specify that it should be presented to the Registrar through a signed petition authenticated before a notary public. G.R. sec. 142.1 of the Mortgage Regulations.